UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES SPICER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-02760-SEB-TAB |
| | ) | |
| GEO GROUP, | ) | |
| MARK SEVIER, | ) | |
| SCUDDER, | ) | |
| JONES, | ) | |
| NDIAYE, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff James Spicer is an Indiana inmate currently incarcerated at New Castle Correctional Facility ("New Castle"). He brings this action under 42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment rights by failing to protect him from an attack by his cellmate. Defendants The GEO Group, Inc. ("GEO")[1]; Mark Sevier; Captain Scudder; Ms. Jones; and Sergeant Ndiaye filed a motion for summary judgment. Dkt. 22. For the reasons stated below, that motion is **granted**.

**I.
Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A

---

[1] Mr. Spicer identified GEO as "GEO Group" in his complaint, but GEO's proper name is "The GEO Group, Inc." The **clerk is directed** to update the docket accordingly.

"genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

In this case, Defendants have met that burden through their unopposed motion for summary judgment. The Court gave Mr. Spicer multiple opportunities to file a substantive response to Defendants' motion for summary judgment, but he failed to do so. Accordingly, the Court considers the motion for summary judgment to be unopposed, and the facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R.

56-1(f); see S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts).[2] "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
## Factual Background

Because Defendants moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). As explained, Mr. Spicer has not filed a substantive response to the summary-judgment motion or contested any of Defendants' Material Facts Not in Dispute, so the Court treats Defendants' supported factual assertions as uncontested. *See Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020); S.D. Ind. L.R. 56-1(b), (f).

---

[2] Mr. Spicer filed multiple non-substantive responses to Defendant's motion for summary judgment, in which he asked the Court to deny the motion for procedural reasons, extend the discovery deadline, and defer ruling on the motion so that he could do more discovery under Federal Rule of Civil Procedure 56(d). *See* dkt. 37. All of those attempts were unsuccessful, and—on February 11, 2022—the Court gave Mr. Spicer one final chance to file a substantive response, which was due on or before February 25, 2022. *Id.* at 3. He failed to do so. On May 10, 2022, the Court received a filing from Mr. Spicer titled "Notice to Inform the Court of Plaintiff's Proof of His Repeated Attempts to Comply with the Court's Pretrial Schedule Order." Dkt. 41. This document appears to be an attempt to show the Court that Mr. Spicer has been trying to comply with the Court's pretrial scheduling order but that New Castle's library has failed to file his documents. *Id.* It is not a substantive response to the summary-judgment motion, nor does it indicate that Mr. Spicer ever attempted to file a substantive response. Thus, the Court considers the summary-judgment motion to be unopposed. Regardless, even if Mr. Spicer's non-substantive responses could be construed as an opposition to the summary-judgment motion, the Court's analysis of the motion would be the same because Mr. Spicer has never specifically controverted any of Defendants' Material Facts Not in Dispute with admissible evidence or shown that Defendants' facts are not supported by admissible evidence. As a result, under Local Rule 56-1, the Court assumes that the facts as claimed and supported by admissible evidence by Defendants are admitted without controversy. S.D. Ind. Local Rule 56-1(f)(1)(A)–(B); *see also* dkt. 25 (notifying Mr. Spicer of the consequences of failing to controvert Defendants' evidence).

GEO is the private company that runs New Castle. *See*, *e.g.*, Affidavit of Hannah Winningham, ("Winningham Aff."), dkt. 24-3 ¶ 2 (noting that she is an employee of GEO who works at New Castle); Affidavit of Sgt. Ndiaye ("Ndiaye Aff."), dkt. 24-2 ¶ 2 (same). On September 18, 2020, Mr. Spicer was housed in the M1 Unit of New Castle, sharing a cell with inmate J.M. Dkt. 17 at 2 (admitting ¶ 11 of Mr. Spicer's complaint).[3] That day, J.M. told non-Defendant Officer Dunlap that he wanted to be transferred and that he would "catch a charge" if he was not moved and "wanted to talk to Sgt. Ndiaye." *See* dkt. 23 at 3; *see also* Winningham Aff., dkt. 24-3 ¶ 7 (stating, "I am aware that Plaintiff's cellmate stated that if he was not moved then he was going to catch a charge, and that this statement was made prior to the incident between Plaintiff and his cellmate . . . ."). However, Mr. Spicer has not designated any evidence showing that J.M. or Officer Dunlap relayed this statement to Sergeant Ndiaye. Defendant Case Manager Jones later came to do clean-up in front of Mr. Spicer's cell and "was somewhat made aware of [J.M.'s] agitation when [he] stated 'he wants away from child molesters and check-ins.'" Dkt. 23 at 3 (citing dkt. 1 ¶¶ 17–19). J.M. told Ms. Jones that he would "catch a charge" if she did not get him moved now because "he wants out of M-Unit." *Id.* Later that night, J.M. attacked Mr. Spicer with a "shank" or homemade knife. *Id.* (citing dkt. 1 ¶ 22).

Before the attack, Defendant Sergeant Ndiaye had no knowledge of any conflicts between Mr. Spicer and J.M. or any threats to Mr. Spicer's safety. Ndiaye Aff., dkt. 24-2 ¶¶ 7–10. If Sergeant Ndiaye had known about any such conflicts, she would have separated them consistent with NCCF, IDOC, and GEO policy. *Id.* ¶ 8. In fact, cellmates are often separated because they report problems with each other. *Id.*

---

[3] The Court uses initials for J.M. in this Order because the allegations against him are serious and his full name is not relevant to the summary-judgment motion.

Defendant Captain Scudder was assigned to a different unit on September 18, 2020, and he no knowledge of the events taking place on Mr. Spicer's unit that day. Affidavit of Captain Scudder, dkt. 24-6 ¶¶ 5–6.

## III.
## Discussion

After screening, Mr. Spicer was allowed to proceed with two claims: (1) Eighth Amendment failure-to-protect claims against Captain Scudder, Sergeant Ndiaye, and Ms. Jones; and (2) Eighth Amendment failure-to-train claims against New Castle Warden Mark Sevier and GEO. Dkt. 12.

### A. Failure-to-Protect Claims

Mr. Spicer alleges that Captain Scudder, Sergeant Ndiaye, and Ms. Jones failed to protect him from J.M.'s attack. Prison officials have a duty to protect those in their custody from violence at the hands of other inmates. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). But "[n]ot every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety." *Jones v. Vululleh*, No. 1:16-cv-1272-JMS-MPB, 2018 WL 1256796, at *3 (S.D. Ind. Mar. 12, 2018) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A "prison official is liable for failing to protect an inmate from another prisoner only if the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837).

Thus, an Eighth Amendment failure-to-protect claim has objective and subjective components. First, the harm to which the prisoner was exposed must be an objectively serious one. *See Gevas*, 798 F.3d at 480 (being stabbed by cellmate constitutes serious harm). Second, the subjective prong of the deliberate indifference standard "requires that the official must have actual, and not merely constructive, knowledge of the risk in order to be held liable; specifically, he 'must

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.'" *Id.* at 481 (quoting *Farmer*, 511 U.S. at 837). On this point, "[c]omplaints that convey only a generalized, vague, or stale concerns about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger." *Id.* at 480–81. By contrast, "a complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Id.* at 481.

Defendants do not dispute that Mr. Spicer suffered an objectively serious harm after J.M. attacked him with a shank. *See generally* dkt. 23. Thus, the only question is whether Captain Scudder, Sergeant Ndiaye, or Ms. Jones acted with deliberate indifference under the subjective prong of the test.

As to Captain Scudder, the undisputed designated evidence establishes that he was not working on Mr. Spicer's unit on the day of the attack and that he had no knowledge of the events taking place on that unit. Mr. Spicer also has not come forward with any admissible evidence that would support an inference that Captain Scudder had other knowledge of a substantial risk of harm to Mr. Spicer and disregarded that risk. Accordingly, Captain Scudder is entitled to summary judgment in his favor because Mr. Spicer has "failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex*, 477 U.S. at 323.

Likewise, as to Sergeant Ndiaye, the undisputed designated evidence establishes that—before the attack on September 18, 2020—she had no knowledge of any conflicts between Mr. Spicer and J.M. or any threats to Mr. Spicer's safety. Although J.M. requested to speak with Sergeant Ndiaye, Mr. Spicer has not designated any evidence showing that either he or Officer

Dunlap communicated J.M.'s statement to her before the attack. Accordingly, Sergeant Ndiaye is also entitled to summary judgment in her favor.

Finally, as to Ms. Jones, the evidence viewed most favorably to Mr. Spicer shows only that she knew J.M. wanted to be transferred out of M-Unit because he wanted to get away from "child molesters and check-ins" and that he threatened to "catch a charge" if he was not transferred right away. *See* dkt. 23 at 3 (citing dkt. 1 ¶¶ 17–19). J.M.'s reference to "catching a charge" if he was not transferred out of M-Unit was too general and vague to support an inference that his cellmate—Mr. Spicer—was subject to a substantial risk of harm. J.M. put Ms. Jones on notice that he intended to break prison rules—not that he intended to harm someone, much less that he intended to stab Mr. Spicer.

And, even if J.M.'s statements to Ms. Jones could support such an inference, Ms. Jones argues that no evidence would allow a reasonable jury to conclude that she did, in fact, draw such an inference. Dkt. 23 at 7. Mr. Spicer failed to designate any admissible evidence in response to that argument, and the Court agrees that the summary-judgment record is devoid of any evidence from which a reasonable jury could conclude that Ms. Jones had actual knowledge of a substantial risk of harm to Mr. Spicer and disregarded it. *Compare Butera v. Cottey*, 285 F.3d 601, 606 (7th Cir. 2002), *abrogation on other grounds recognized by Kemp v. Fulton Cnty.*, 27 F.4th 491, 495–96 (7th Cir. 2022) (prisoner's statement that he was "having problems" in his cellblock and "needed to be removed" insufficient to establish actual knowledge of substantial risk of harm) and *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (prisoner's statement that inmates were "pressuring him" and "asking questions" inadequate to establish actual knowledge of substantial risk of harm) *with Haley v. Gross*, 86 F.3d 630, 643 (7th Cir. 1996) (prisoner's statements to sergeant that he and his cellmate were not getting along, his cellmate was crazy, and his cellmate was trying to intimidate

him and "start something" sufficient to establish actual knowledge of substantial risk of harm). Accordingly, Ms. Jones is entitled to summary judgment in her favor. *Celotex*, 477 U.S. at 322 (holding that entry of summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial).

### B.  Failure-to-Train-and-Supervise Claims

In his complaint, Mr. Spicer alleged that doubled-bunked inmates in the Protective Custody Unit are under a "stricter vetting procedure" than those in general population and that Warden Sevier and GEO failed to train and supervise New Castle employees about these procedures. Dkt. 1 at 7.

Although a private entity, GEO acts under color of state law and therefore may be liable for violating Mr. Spicer's Eighth Amendment rights under the theory announced in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 966 (7th Cir. 2019). "Prevailing on such a claim requires evidence that a [GEO] policy, practice, or custom caused" the constitutional violation. *Id.* "[A] plaintiff must ultimately prove three elements: (1) an action pursuant to a municipal [or corporate] policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal [or corporate] action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020). A *Monell* failure-to-train or failure-to-supervise theory requires a showing that a corporate defendant had notice that gaps in its training or supervision would cause constitutional violations; in many cases, notice is shown with proof of a prior pattern of similar constitutional violations. *See Helbachs Café LLC v. City of Madison*, __ F.4th __, 2022 WL 3350588, at *3 (7th

Cir. Aug. 15, 2022) (citing *J.K.J. v. Polk Cnty.*, 906 F.3d 367, 379–80 (7th Cir. 2020)) (failure-to-train); *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 599–600 (7th Cir. 2019) (failure-to-supervise).

As to GEO, Mr. Spicer's *Monell* claim fails because, as explained above, he has failed to demonstrate an Eighth Amendment violation. *See Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) ("But if no constitutional violation occurred in the first place, a *Monell* claim cannot be supported."). And even if he had demonstrated a constitutional violation, GEO denies that it provided inadequate training or supervision, pointing to record evidence that—pursuant to policy—cellmates are routinely separated when they report problems with each other. *See* dkt. 23 at 8. Mr. Spicer has failed to rebut this evidence with admissible evidence from which a reasonable jury could infer that there were gaps in GEO's training or supervision or that GEO had notice that the gaps would cause constitutional violations. And, even if he had, he has not come forward with any evidence or argument to support the conclusion that any such training or supervision gap was the "moving force" behind his injuries. Instead, as Defendants argue, *see* dkt. 23 at 8, there is simply no record evidence to support Mr. Spicer's failure-to-train or failure-to-supervise claims against GEO. Accordingly, GEO is entitled to summary judgment in its favor.

As to Warden Sevier, Mr. Spicer's failure-to-train claim fails because "failure to train claims are usually maintained against municipalities [or corporations], not against individuals, and, in the Eighth Amendment context, such claims may only be maintained against a municipality [or corporation]." *Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005) (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 739–40 (7th Cir. 2001)). Regardless, even if Warden Sevier could be liable in his individual capacity[4] under the Eighth Amendment based on his failure to train or supervise GEO

---

[4] To the extent that Mr. Spicer pursues a claim against Warden Sevier in his official capacity, it is duplicative of his claims against GEO and fails for the same reason.

employees, Warden Sevier argues that there is no evidence from which a reasonable jury could conclude that he failed to train or supervise his staff. Dkt. 23 at 7. Mr. Spicer failed to designate any admissible evidence in response to this argument. Moreover, the Court agrees that the summary-judgment record contains no evidence that would allow a reasonable jury to conclude that Warden Sevier's training or supervision of his staff was in any way inadequate. Accordingly, he is entitled to summary judgment in his favor.

## IV.
## Conclusion

For the reasons stated above, Defendants' motion for summary judgment, dkt. [22], is **granted**. This action is dismissed **with prejudice**. The **clerk is directed** to update the docket to reflect that the proper name for Defendant GEO is "The GEO Group, Inc." Final judgment will issue by separate entry.

**SO ORDERED.**

Date:   8/31/2022

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JAMES SPICER
169513
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Adam Garth Forrest
BBFCS ATTORNEYS
aforrest@bbfcslaw.com

Joseph Thomas Lipps
BBFCS ATTORNEYS
jlipps@bbfcslaw.com